**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WAIMING YAN, individually, and
on behalf of all others similarly
situated,
Plaintiff,
v.                                                    Case No.  8:20-cv-00410-MSS-TGW

JEFFRY KNIGHT, INC., d/b/a
KNIGHT ENTERPRISES,KNIGHT
BROADBAND LLC, JEFFRY
KNIGHT and JASON WELZ

Defendants.
_____/

**JOINT MOTION FOR APPROVAL OF FLSA**
**SETTLEMENT AND ENTRY OF STIPULATED JUDGEMENT**

Plaintiff, WAIMING YAN, and Opt-In Plaintiffs (individually "Plaintiff" or

together with Opt-In Plaintiffs, the "Plaintiffs"), together with all Defendants

Jeffry Knight Inc., d/b/a Knight Enterprise (JKI), Knight Broadband LLC (KBB),

Jeffry Knight, and Jason Welz (together, "Defendants"), jointly move for an Order

Approving the FLSA Settlement and Entry of a Stipulated Judgment and state as

follows:

**INTRODUCTION**

Following a mediation held on June 3, 2022, during which the parties settled

the Plaintiffs' wage claims and their claim for attorney's fees and costs, the Parties

have now entered into a Settlement Agreement to resolve all the current Plaintiffs'

1

Fair Labor Standards Act claims (the "FLSA" 29 U.S.C. 216(b)) wage claims. Pursuant to this Court's Order [D.E. 165] and the Eleventh Circuit's precedent *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties present their proposed settlement to the district court, which "**may enter a stipulated judgment** after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982).

Accordingly, the Parties present the Settlement Agreement (the "Settlement Agreement") to the Court for approval. Pursuant to the Settlement Agreement, Defendant shall pay to the Plaintiffs, the gross sum of Two Hundred and Seventy Five Thousand Dollars No Cents ($275,000.00) in exchange for the release of Plaintiffs' wage claims and dismissal of this case. In addition, the Settlement Provides for Defendants to separately pay Plaintiffs' incurred attorneys' fees in the sum of $395,000.00 and reimburse Plaintiffs' counsel for advanced costs in the sum of $30,988.65. A copy of the executed **Settlement Agreement** is attached hereto as **Exhibit 1**, and a breakdown of each Plaintiffs' individual settlement proceeds are listed in *Appendix A* to the Settlement Agreement.

The Parties now move this Court for an order approving the terms of the Settlement Agreement, dismissing the case, entering judgment in favor of the Plaintiffs for the wages, approving the provisions of attorney's fees and costs, and retaining jurisdiction to enforce the terms of the Settlement Agreement. Given the

significant risk and expense of continued litigation, the Settlement Agreement should be approved. The Settlement Agreement represents a fair, adequate and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law, and questions of whether the Plaintiffs would obtain favorable judgment at trial.

## <u>BACKGROUND</u>

1.      Plaintiffs formerly performed work for Defendant, JKI as independent contractors pursuant to JKI's Subcontractor Agreements (all filed with the Court by Defendants), working as "cable installers" aka Cable Installation Technicians who installed residential cable, internet and telephone services primarily for Charter Communications (spectrum) and formerly Bright House Networks.

2.      All cable technicians were paid strictly on a piece-rate basis, based upon the Defendants' customer agreement. Charter Communications rates are paid to JKI according to a Master Services Agreement between Charter and JKI.

3.      On February 20, 2020, Plaintiff Yan brought this collective action seeking damages for Defendant's failure to pay overtime wages (premiums) in violation of the Fair Labor Standards Act, 29 U.S.C. §201et. seq ("FLSA") [DE 1], and contending that he and all other subcontractor cable installers (SCI), were willfully misclassified by JKI as independent contractors, and should have been employees as defined by the FLSA.

4.     Plaintiff Yan alleged that JKI failed or refused to pay overtime compensation for any hours worked in excess of forty hours during any given workweek.  Plaintiffs alleged that JKI knew their work as an SCI required them to work more than 40 hours routinely each week.  Plaintiff Yan also alleged that JKI, Welz and Knight all knew that SCI were employees and not independent contractors, but that they willfully chose to misclassify them as IC to avoid the FLSA overtime pay requirements.

5.     Defendants deny the allegations and maintain that all the Plaintiffs here were properly classified as IC, and were not employees and thus not entitled to any premium pay for overtime hours worked.  Defendants also assert that they had a good faith basis under the  FLSA to classify the Plaintiffs as IC such that no liquated damages would attach, in the event the Defendants prevail on the issue of liability under the FSLA.

6.     Plaintiff Yan was then joined by 32 other party Plaintiffs who worked for JKI as SCI and who also alleged that they were misclassified as employees and routinely worked overtime hours without being compensated for such time.   Plaintiffs alleged that overtime compensation was earned and due but were discouraged/prevented from reporting overtime hours.  (Discovery revealed that one Opt-In Plaintiff, Michael Henry [D.E. 137-1], was never under contract with JKI, and instead worked for another entity. Accordingly, the parties stipulated that

Opt-In Plaintiff Henry is not an appropriate party to this action, and stipulated to his dismissal without prejudice.)

7.      In lieu of filing their own individual lawsuits or actions, each of the 32 opt-in party plaintiffs specifically authorized Waiming Yan to negotiate and reach a settlement with the Defendant on their behalf and agreed to be bound by the terms of any settlement reached according to the express terms of the Consent to Join Forms.[1]

8.      On September 15, 2020, Plaintiff Yan filed a Motion to Conditionally Certify a Collective Action and Authorize Notice to other installation technicians [DE 56], and then refiled it on February 18, 2022 [DE 134] and it is still pending.

9.      Plaintiffs filed a motion for partial summary judgment on liability [DE 156] on 05/06/22, after the discovery deadline ended. Prior to Defendants answering the Motion for Summary Judgement, Parties attended a full day mediation before employment and FLSA mediator, Shane Munoz, Esq. The mediation resulted in a total settlement of the Plaintiffs claims and an end to this action.

10.      Defendants continue to assert that Plaintiffs were properly classified as independent contractors and not owed any wages for their claimed overtime

---

[1] *See e.g.* DE 14-2 Consent Form of Brian Michaelis: "I specifically authorize the named Plaintiff, along with his counsel of record, Mitchell Feldman Esq. and the law firm of Feldman Legal Group, to represent me in this lawsuit, to act as my agent to prosecute this lawsuit on my behalf, to file any related state law claims, and to negotiate a binding settlement of all claims for overtime wages, whether under state or Federal law, I have against Jeffry Knight Inc. d/b/a Knight Enterprises and its affiliated and related companies, subsidiaries or any other future named Defendants

hours. Defendant asserts that they acted in good faith compliance with the FLSA, and as per the FLSA, paid the Plaintiffs according to the hours they submitted. Defendants also dispute that the Plaintiffs routinely worked more than 40 hours throughout their workweeks, and contend that even if they are properly classified as employees, the amount of unpaid overtime hours would be substantially less than the Plaintiffs allege.

11. Despite the parties' arguments and differences, the parties have reached a compromise to resolve the Plaintiffs' claims, including their claims for attorney's fees and costs incurred in this action.

12. As the Court is probably aware from the docket, since this litigation's inception on February 20, 2020, this matter has been heavily litigated.

13. The Parties have been to arbitration and back, and Plaintiffs have taken 5 depositions, including the JKI corporate representative, Jason Welz, Jeffry Knight, Jill Williams the former HR director of JKI and current HR director for KBB, and an IT or technology officer for JKI.

14. Moreover, there have been well over hundreds of thousands, of records and electronically stored records produced in response to discovery, and from subpoenas to non-parties, containing many thousands of electronically stored files and records, including records from Charter Communications.

15. Nonetheless, Defendants concluded that further litigation of this matter would be protracted, distracting and expensive, and thus it was desirable

that this matter be fully and finally resolved in the manner and upon the terms set forth in the FLSA Settlement Agreement (Exhibit 1).

16. Similarly, Plaintiffs, and their experienced FLSA wage and hour attorneys have determined that the settlement set forth in the FLSA Settlement Agreement is in their best interest. Plaintiffs recognize and acknowledge the time and expense of continued litigation necessary to prosecute this case through summary judgment, trial and possible appeal. Moreover, the result is inherently uncertain and risky, including the risk of recovery of $0.00 and the possibility that Plaintiffs may be responsible for Defendant's taxable costs. Additionally, given the legal and factual arguments asserted by Defendants, the continued litigation would be consumed by protracted, incremental litigation, including the risk the Court granted Defendants additional time to set 10 or more plaintiffs for deposition. Moreover, numerous non-party witnesses and companies would have been dragged into this litigation to testify in deposition and trial.

17. Although a substantial amount of discovery has been conducted, at least by the Plaintiffs, there remain many genuine issues of factual and legal issues in dispute all of which would still require a year or more of continued litigation, which, if the Court were to grant conditional certification upon Plaintiffs' Motion for Reconsideration, could enlarge the scope of the discovery and factual disputes:

a. Whether Plaintiffs were employees under the FLSA and improperly classified by Defendants as independent Contractors;

b.      Whether Defendants were aware of Plaintiffs' overtime hours and if so how many hours they worked over 40 in each workweek;

c.      Whether a two or three-year statute of limitations should apply;

d.      Whether Defendants acted with objective and subjective good faith such that payment of liquidated damages would be inapplicable;

e.      Whether Defendant KBB is liable as a successor under the FLSA for the Plaintiff's wages;

f.      Whether Jason Welz and Jeffry Knight were employers under the law and jointly and severally liable for Plaintiff's wage; and

g.      Whether Plaintiffs worked in excess of forty (40) hours and if so, how many hours and what are the proper overtime compensation rates each was owed.

18.     Notwithstanding the foregoing, upon careful review of the Plaintiffs' payroll records, time records, cell phone records, and Charter Communication work order records; Plaintiff Yan, with the assistance of counsel, determined that a compromise was in his best interests and the best interests of his fellow opt-in plaintiffs.

19.     In reaching this compromise, Plaintiff and Plaintiffs' Counsel considered the fact that had they proceeded to trial, there was a risk of limiting

their wage claims to a two-year Statute of Limitations period, and that the court may decline to award liquidated damages.

20. On June 3, 2022, the Parties reached a negotiated settlement on the essential and material terms of this settlement, and all terms of the settlement were subsequently reduced to writing, and then approved by all parties and their counsel [D.E. 164]. Plaintiff Yan has executed the written settlement agreement individually and in his representative capacity and as agent for the opt-in Plaintiffs, who all consented to be bound by proxy to any settlement reached by Yan and the Defendants. The settlement agreement executed in counterparts is attached as Exhibit 1.

21. The Plaintiffs reached this settlement with the advice of counsel and relied upon their counsel to analyze the payroll records, time records and other business/ GPS records to perform the wage calculations. The final settlement distributions were applied pro rata to each of the opt-in Plaintiffs according to their qualifying workweeks, the time records and their alleged unpaid overtime hours, and their own respective regular rates of pay.

22. In addition to resolving the Plaintiffs' underlying claims, the Settlement Agreement resolves all outstanding claims for attorneys' fees and costs. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed for Defendants to pay Plaintiffs' attorneys' fees and costs,

totaling $395,000.00, plus $30,988.65 for reimbursement of Plaintiffs' taxable and incurred costs incurred in this matter.

23.    Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount paid to Plaintiffs so as not to affect the wage payments or the sum Defendants agreed to pay for wages.

24.    For purposes of settlement, the Defendants stipulated that the quantum of attorneys' fees and costs they agreed to pay Plaintiffs and their counsel is fair and reasonable, and reached pursuant to *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

25.    Defendants have been represented by highly competent and professional counsel, who have vigorously represented Defendants.  Prior to the recent arms-length negotiations and settlement discussions leading up to this settlement, Defendants did not make any bona fide settlement offers, and Plaintiffs' Counsel was required to equal Defendant's efforts.

26.    The amount Defendant has agreed to and stipulated to pay to Plaintiffs for incurred attorney fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount agreed to be paid to Plaintiffs for wages and after agreeing upon a sum to be paid to Plaintiffs to settle their wage claims; moreover, the attorneys' fees and costs agreed to be paid by Defendant are fair and reasonable under the circumstances here.

WHEREFORE, for the reasons set forth above and as set forth in the below Memorandum of Law, the Parties respectfully request that the Court enter an order approving the Settlement Agreement and enter Judgment for the Plaintiffs in the amount of the settlement agreement including attorney's fees stipulated to be paid and reserve Jurisdiction for a period of 60 days to enforce the terms of the Settlement Agreement.

## MEMORANDUM OF LAW

**I.    THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS**

### A. The Settlement Meets the Requirements Set Forth in Lynn's Food.

As the Eleventh Circuit explained in <u>Lynn's Food Stores, Inc. v. United States,</u> in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "**may enter a stipulated judgment** after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982).  Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit

does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing this settlement, this Court will find that the Parties' Settlement Agreement is fair, reasonable and should be approved. The Stipulation resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to unpaid overtime compensation.

Furthermore, the Plaintiffs were represented by experienced wage & hour counsel, who in the "adversarial context of a lawsuit," negotiated a "reasonable compromise of disputed issues." on behalf of the Plaintiffs. *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See* Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); Lynn's Food Stores, 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> *Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA*

> *coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

Lynn's Food Stores, 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

> A. the existence of fraud or collusion behind the settlement;
>
> B. the complexity, expense, and likely duration of the litigation;
>
> C. the stage of the proceedings and the amount of discovery completed;
>
> D. the probability of the plaintiff's success on the merits;
>
> E. the range of possible recovery, and
>
> F. the opinions of the counsel.

*See* Leverso v. South Trust Bank of Ala., Nat. Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).[2]

---

[2] *See also* Dees v. Hydradry, Inc., 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); Hamilton v. Frito-Lay, Inc., 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also* Hill v. Florida Indus. Elec., Inc., No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); Pacheco v. JHM Enters., Inc., *et al.,* 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3*; see also* Cotton v. Hinton. 559 F.2d 1326, 1331 (5th Cir. 1977).

**B. The Settlement Was the Result of Arm's Length Negotiations Free from Collusion**

The settlement reached was the result of hard-fought, adversarial, arm's length negotiations that have taken place over protracted and costly litigation that has been ongoing for over two years and 4 months. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. Pickett v. IBP, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion, and after mediation by an experienced employment mediator had failed. The Parties were able to settle this action only after they engaged in significant discovery and after significant discovery disputes. *See* Diaz v. Hillsborough County Hos. Authority, 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel but "should be hesitant to substitute its own judgment for that of counsel"). The extensive discovery and hearings alone in this case establish the adversarial nature of this litigation, and the benefits of a compromised settlement. Moreover, Plaintiff Yan desired resolution in lieu of continued, protracted litigation, time commitments and having to commit to attending a trial. The Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' Counsel believe that on inspection, this Court will join them in concluding that the proposed Settlement Agreement is fair, reasonable and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to liability [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See* <u>Lynn's Foods</u>, 679 F.2d at 1353-54. Here, the Plaintiffs are each receiving on average $110.00 per workweek in compensation without having to prove anything to a jury and based solely upon their alleged estimations of unpaid work hours and without regard to whether they even worked 1 day or 5 or more days in the week. Each Plaintiff is receiving a pro rata share of the overall settlement proceeds based upon the hours each alleged and taking into consideration the qualifying workweeks for each individual.

According to the last publicly reported settlement against JKI by former SCI like the Plaintiffs here, in the case of <u>Weckesser v. JKI, Case no. 2:16-cv-2053-RMG. (SC)</u>, the average per person there was $110.00 per workweek as well. Thus, in negotiations, Plaintiffs set as a minimum that they receive a similar settlement per person as JKI paid to the Plaintiffs in <u>Weckesser</u>, and here, the same result was achieved.

### C. The Complexity, Expense and Duration of Litigation

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed on February 21, 2020, and settlement was preceded by more than 28 months of heavy, contentious and complex discovery and litigation. During the pendency of the case, the Parties engaged in formal discovery, including exchanging over hundreds of thousands of pages of personnel files, payroll, emails, work order data and information, and hundreds of additional ESI files including emails. Plaintiffs' counsel conducted multiple depositions of Defendants', officers and employees, and also analyzed and assessed all the payroll records and other Charter records and documents. This matter was ultimately resolved only after the parties engaged in extensive research and analysis and arms-length negotiations after the first mediation had failed. Moreover, and equally important is the fact that all of the Defendants had not made an acceptable offer to settle the Plaintiffs wages claims until finally reaching a meeting of the minds at a second mediation.

If the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery, litigation, and summary judgment briefing. With near certainty, this case would require a two week or three month jury trial (depending upon the Court's Ruling on Representative Testimony) on questions of fact and damages in order to present the claims and defenses regarding whether Plaintiffs were misclassified and were in fact employees, and

the amount of wages and number of overtime hours worked.[3]  To prove their claims, Plaintiffs would incur extensive costs involving additional depositions and other discovery costs. Plaintiffs would also likely incur costly forensic computer analysis and costly ESI discovery. Further, the Parties would likely require one or more experts related to the underlying claims and/or defenses.

Thus, settlement is a reasonable means for all Parties to minimize their future risks and litigation costs, which could reach over $1MM in fees and additional costs by the time the case proceeded to a lengthy jury trial.  Additionally, after careful review of the records and discussions with counsel, the Plaintiffs believe they are receiving a fair and reasonable amount of wages and do not wish to continue with costly, risky litigation without any real potential to recover additional sums.  Plaintiffs' Counsel likewise believes the resolution is fair and reasonable taking into account the risks, burdens of proof and the records produced to date.   Plaintiffs also carry the risk of having to pay Defendant's cost and expenses if they did not prevail - risks Plaintiffs naturally wish to mitigate and avoid.

### D. The Stage of Proceedings at Which The Settlement Was Achieved.

The Parties reached a settlement after more than **2 years and 4 months** of intense, time consuming, contentious litigation and through completion of the full

---

[3] The Plaintiffs filed a motion for representative testimony, which remains uncertain, and if 30 plus Plaintiffs have to testify at trial, the trial could conceivably last many months.

discovery deadline and only after Plaintiffs filed their Motion for Summary Judgment on Liability. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in a detailed evaluation JKI's compensation practices for Plaintiffs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged records, information, data and representations regarding the claims and defenses in this matter. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### E. The Likelihood of Success at Trial.

Plaintiffs were employed as independent contractors and not employees, and thus bore the burden of proof at trial, unlike in exemption cases, where the Defendants bear the burden to prove the application of an exemption. The core *bona fide* FLSA disputes in this case relates to whether Plaintiffs were misclassified as independent contractors and whether they should have been employees under the definition in the FLSA; whether any or to what extent any overtime pay is due; whether liquidated damages are appropriate; whether a two or three-year statute of limitations would be applicable.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, it was uncertain whether the court was going to grant the motion for representative testimony, such that 32 Plaintiffs might have to appear for a several months-long trial. Second, Plaintiffs would have faced a risk at trial of not prevailing on their wage claims because they would have had to prove by a preponderance of the evidence that they were employees, and that they worked overtime hours routinely. Further, if the Plaintiffs could not prove that Defendants willfully violated the FLSA by classifying them as independent contractors, for some plaintiffs, they would lose all their eligible wages with the two-year SOL, and many would lose a substantial amount of their wages at issue.

At trial, Defendants would have claimed that (i) JKI properly classified Plaintiffs as independent contractors; (ii) Plaintiffs overtime hours were substantially less than they claimed; (iii) and they enacted and enforced policies and procedures that gave each Plaintiff the discretion to be independent contractors; and (iv) they presented sufficient evidence to show that they acted in both objective and subjective good faith and had a reasonable basis under the FLSA to classify Plaintiffs as independent contractors, such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance. If the case were tried, the jury would have been presented with a case where Defendants would have argued that it maintained compliance with the

FLSA, and Plaintiffs would bear the burden of proving that they were employees and that Defendant acted in willful violation of the FLSA by classifying them as independent contractors.

Second, in the damage analysis conducted by Plaintiffs' Counsel, each Plaintiff is credited with their own respective overtime wages based upon all of their individual estimated hours worked for each qualified week during the three-year statute of limitations periods. To reach the final settlement amount, Plaintiffs then discounted the wages at issue by factoring in the risks of Defendants' arguments and evidence to be presented at trial, resulting in a discounted damage analysis. It is important to note that the final settlement amount reflects a payment of all unpaid overtime hours alleged during the extended three-year SOL period based solely upon Plaintiffs' estimation. But if the case were tried, Defendants would have the opportunity to establish that the number of hours worked per week was significantly less than the Plaintiff's approximated hours, which could substantially reduce Plaintiffs' damages. Furthermore, if Defendants prevailed on their good faith defense, and demonstrated a reasonable effort to comply with the FLSA, liquidated damages would not be awarded, and all wages older than 2 years would be time barred.

Despite diligent investigation and research, there remained highly disputed and uncertain questions of fact of how many actual overtime hours each Plaintiff worked, and whether the jury would find Defendants willfully violated the FLSA

and thus apply a three-year statute of limitations. Furthermore, there remains a dispute among the attorneys on both sides whether the Court would uphold Defendants good faith defense in determining whether or not liquidated damages are appropriate in this matter. In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise the bona fide dispute.

Before this lawsuit, Mr. Yan sought a compromise of his wage claims but Welz, Knight and JKI were unwilling to resolve his claims. After the collective action was commenced, and then other plaintiffs joined this action, these Defendants, as well as KBB also were unwilling to resolve the Plaintiffs' claims. Plaintiffs' counsel continually and pervasively sought to resolve and settle this action but were unsuccessful until after the Plaintiffs filed their Motion for Partial Summary Judgment. The discovery deadline passed and the parties were set to proceed to trial in September 2022. The parties then agreed to mediate on June 3, 2022, at which time all Defendants agreed to contribute to this settlement. Thus, after negotiating a resolution at mediation of all Plaintiffs' claims, it would be illogical and unreasonable to force all Plaintiffs to risk going all the way to trial and gamble on whether: a.) a jury would agree to award the same amount in wages they are receiving in this settlement; b.) risk the application of a two year SOL, instead of the 3 year SOL used in settlement negotiations; c.)

and they would have to pay Defendants thousands of dollars in costs and expenses if they did not prevail on their claims.

There is in this case, like most disputed claims and lawsuits, the possibility exists that Plaintiffs would recover $0, or worse have to pay the other side many thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $275,000.00 representing a reasonable compromise of all the Plaintiffs' overtime wage claims in which each person on average is paid $9,166.66 in wages. These payments represent approximately 3.54 unpaid overtime hours per every workweek in wages recovered for each Plaintiff. Ultimately, each Plaintiff is receiving wages for each and every week they worked in the preceding three years from their filing of their consent to join form, and for Yan, the date of his complaint. Thus, Plaintiffs believe these sums represent a best-case scenario of the wages they might be awarded by a jury, without liquidated damages, and thus is a fair and reasonable compromise.

**F. The Court Should Approve the Negotiated and Stipulated Sum Defendants agreed to pay to Plaintiffs for reimbursement of Their Attorneys' Fees and Costs Incurred in this action, Pursuant to the Settlement Agreement.**

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. *See* Helms v. Central Fla. Reg. Hosp., 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir.

1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." Bonetti v. Embarq Mgmt. Co., 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreement provides for the Defendants to pay Plaintiffs' attorneys' fees incurred as part of the resolution of Plaintiffs' claims in the amount of $395,000.00 in fees in addition to reimbursing Plaintiff's counsel the sum of $30,988.65 in advanced taxable and incurred costs and expenses consisting of filing fees, process server charges, court reporter charges and non-party subpoena charges. Through the separate negotiations with Defendants, by and through their experienced and skilled attorneys, and the assistance of an experienced employment law mediator, Shane Munoz, Esq, the Parties reached a negotiated compromise as to the sum of attorneys' fees and costs to be paid by the Defendants without regard to the amount paid to Plaintiffs.

The sum agreed to be paid to Plaintiffs for their attorneys' fees and costs was stipulated and agreed to be paid by the Defendants and was a compromise and negotiated sum only reached with the assistance of mediator Shane Munoz, Esq. and was 100% separately negotiated from the sums Defendants agreed to pay

to the Plaintiffs for resolving their overtime wage claims. Moreover, the Plaintiffs' attorneys' fees incurred in this protracted, two year and four-month hard fought litigation were substantially higher under the Lodestar. However, since the Defendants wanted to resolve the fees and costs as a condition to paying the agreed upon sum in wages for the Plaintiffs desired to end the entire litigation, the parties turned their efforts to utilize the mediator and mediation process to reach a negotiated compromise and a reduced fee with the Plaintiffs' counsel. This would be no different if later on, Plaintiffs filed their attorney fee motion, Defendants responded, and then the parties mediated a settlement of the attorney's fees. In such circumstances, the Courts would approve the settlement and fee negotiated.

Similarly, Plaintiffs' counsel, who incurred substantially higher sums in lodestar attorney fees, agreed to the reduced lodestar fee in order to obtain this settlement for the Plaintiffs and bring about a resolution for the Plaintiffs, who likewise wanted to end the litigation and avoid further delays, the risks of trial and appeals, and the risk of a zero recovery. Defendants understand they could have sought the Court to determine a reasonable fee, but that doing so was not in their best interests because: a.) it prolonged the litigation and would cause them to incur more in defenses fees; b.) the Plaintiffs' counsel could be awarded their legal fees for proving the amount of the fees, thus increasing their exposure; and c.) the Court could award the full lodestar or a substantially higher fee than they

negotiated with Plaintiffs' counsel. Defendants are satisfied they negotiated a reasonable compromise and are paying a reasonable attorney's fee given the two years and four months of hard-fought litigation. Defendants also agree that the costs being reimbursed are properly charged as litigation expenses, and only include filing fees, service of process charges and court reporter invoices.

The Parties specifically stipulated in the Settlement Agreement that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Further, the sum agreed upon is a substantial, voluntary reduction in the amount of fees actually incurred by Plaintiffs' attorneys, not including the time spent at mediation and in preparing the settlement agreement. Plaintiffs would be entitled to this additional attorney fee time, all of which Plaintiffs and their counsel could have alternatively sought the Court to approve as reasonable attorney's fees as Prevailing Plaintiffs under Section 216b of the FLSA, and thus could have resulted in an Defendants jointly and severally being liable for a substantially higher sum to Plaintiffs for attorney's fees.

Both before and after commencing this action, and then continually over the following two years and four months of litigation and into the dispositive motion deadline, Plaintiffs' counsel spent a significant amount of time in the case preparing the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable issues, engaging in formal and informal discovery, and attending hearings and depositions; engaging multiple mediations

and informal settlement discussions with Defendant's counsel that ultimately resulted in this settlement.

Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with numerous Plaintiffs and witnesses further increasing the number of hours expended in this matter. Plaintiffs' Counsel reviewed and reconciled over 2,000,000 pages and files pages of documents and electronically stored files and records to create a monumental damages model which included various scenarios. Ultimately, Plaintiff counsel's damages model was presented to Defendants and incorporated the time records and Charter Communications work order records that were relied upon by both parties in reaching a settlement that compensates a reasonable amount to each Plaintiff that could be awarded by a jury for unpaid wages due and an equal amount of liquidated damages.

Plaintiffs' counsel spent substantially more hours than the attorneys' fees reflect litigating this matter from inception through filing this Motion for Approval of Settlement. Plaintiffs' counsel also spent and incurred approximately $30,988.65 of hard, taxable costs associated with this litigation. During settlement negotiations, the Parties separately negotiated attorneys' fees and costs without regard to the amount owed to Plaintiffs. Ultimately, the Parties agreed to the compromise in the sum of Plaintiff's attorneys' fees for the sum of $395,000.00, in addition to Defendants to reimbursing Plaintiffs their incurred costs of $30,988.65. Based upon Plaintiffs' counsel's hourly rates as awarded in other

FLSA actions, and the reasonable rates for similarly experienced attorneys in FLSA collective actions in this district, hourly rates of $400.00 for Attorney Feldman; $400.00 for Attorney Williams, and $325.00 for Jason Quintus were utilized. These rates have previously been declared as reasonable and are not challenged by Defendants. Further, the fact that Plaintiffs' counsel agreed to a significantly reduced attorneys' fee from what was actually incurred demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Further Plaintiffs' Counsel's attorneys' fees and costs are reasonable in light of the fact that Plaintiffs' Counsel had to litigate against four defendants, following amendment of the Complaint and the litigation in this matter has continued for more than two years and three months until Plaintiffs' counsel was able to secure the sum of $275,000.00 in wages as part of the settlement of Plaintiffs' claims despite Defendants' vigorous defenses that Plaintiffs' were not employees and were properly classified as independent contractors, and thus owed exactly $0.00 in wages.

This settlement was achieved only by and through Plaintiffs' counsel's ability to persuade Defendants that Plaintiffs' claims had merit and that Defendants faced the very real risks of having to pay more than this sum in wages, as well as incurring attorney's fees that already eclipsed the entire amount of the settlement if they continued to litigate. This case settled after almost two and a

half years of litigation. Thus, it is appropriate that Plaintiffs' counsel be fairly and reasonably compensated for performing these necessary legal services. Defendants stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances, and Plaintiffs have also agreed to accept the reduced amount of attorneys' fees from their respective lodestars for the purpose of ending this litigation and obtaining a settlement that Plaintiffs desired in lieu of the continued risks of trial, including the risks of having to pay the Defendant's litigation costs. Other courts in this district have indicated that when attorney's fees are negotiated separately from the payment to plaintiff(s), "an in-depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." King v. My Online Neighborhood, Inc., No. 6:06-cv-435-Orl-22JGG, 2007 U.S. Dist. LEXIS 16133, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007); McGinnis v. Taylor Morrison, Inc., 3:09-cv-1204-J-32MCR (M.D. Fla. Jan. 23, 2010); Small v. Beach Pizza, No. 3:20-cv-1306-BJD-MCR, 2021 U.S. Dist. LEXIS 214600, at *5 (M.D. Fla. Nov. 5, 2021).

All of the above factors warrant that the $395,000.00 agreed by negotiation to be paid by Defendants to Plaintiffs' counsel for reimbursement of incurred attorneys' fees and costs are fair and reasonable under all the facts and circumstances, and the Court should approve the same. This compromised sum moreover is fair on its face given all the above information. The Defendants do

not challenge the lodestar of the Plaintiffs and are well aware they could have requested the Court instead decide what a reasonable fee was.

## CONCLUSION

The Parties voluntarily agreed to the terms of their settlement. All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreement, enter a stipulated judgment in favor of the Plaintiffs in the amounts agreed upon, including the amount agreed to be paid in attorney's fees and costs, reserve jurisdiction to enforce the terms of this FLSA settlement agreement for a period of 60 days, and then dismiss this case with prejudice upon compliance by Defendants with the payment of the sum agreed upon.

Respectfully Submitted this _____ day of June 2022.

s/ Mitchel L. Feldman
Michel L. Feldman, Esquire
FBN: 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave, Suite 101
Tampa, FL 33725
Telephone: (813) 639-9366
Email: mfeldman@flandgatrialattorneys.com
ATTORNEY FOR PLAINTIFFS

s/ Benjamin L. Williams
Benjamin Lee Williams, Esq.
FBN: 0030657
Williams Law P.A.

s/ Joseph P. Kenny
Joseph P. Kenny, Esquire
FBN: 59996
WEBER, CRABB & WEIN, P.A.
5453 Central Avenue
St. Petersburg, FL 33710
Telephone: (727) 828-9919
Emails: joseph.kenny@webercrabb.com
leanne.meyers@webercrabb.com
ATTORNEY FOR DEFENDANTS
JEFFRY KNIGHT, INC and
JEFFRY KNIGHT

123 18th Avenue N. Unit A
Jacksonville Beach, FL 32250
Telephone: (904) 580-6060
Email: bwilliams@williamslawjax.com
ATTORNEY FOR PLAINTIFFS

<div style="display:flex">
<div>

s/Joelle Bordeaux _____
Joelle Bordeaux, Esquire
Law Office of Joelle Bordeaux, PLLC
Florida Bar No.: 0048204
5901 Sun Boulevard; Suite 207
St. Petersburg, FL
Tel: (727) 571-1300/Fax: (727) 313-9399
*Joelle@jbordeauxlaw.com*
Attorney for: JASON WELZ

</div>
<div>

s/Joseph Mueller_____
V. Joseph Mueller, Esq.
FBN: 0798630
ABBEY, ADAMS, BYFLICK &
MUELLER,LLP
3201 US Highway 19 S, 9th Floor
St. Petersburg, Florida 33711
servicejmueller@abbeyadams.com
Counsel for Defendant, KNIGHT
BROADBAND, LLC

</div>
</div>